THE PEOPLE OF PUERTO RICO, Plaintiff and Appellee, *v.* AMÉRSITO MARTÍNEZ VEGA, Defendant and Appellant.

No. CR-69-103. Decided April 9, 1970.

*P. Pagán Colón* for appellant. *Gilberto Gierbolini, Solicitor General,* and *Américo Serra, Assistant Solicitor General,* for The People.

MR. JUSTICE PÉREZ PIMENTEL delivered the opinion of the Court.

At twelve o'clock sharp on the night of December 31, 1966, appellant fired several revolver shots from the balcony of an apartment which he occupied in one of the buildings of the Manuel A. Pérez Public Housing Development in Río Piedras, wounding with one of the missiles the human being Yolanda Maldonado, who died as a result of such wound.

For these facts appellant was charged with the crimes of involuntary manslaughter and violation of § 6 of the Weapons Law of Puerto Rico.

On November 3, 1967, the hearing for both cases was held jointly before the Superior Judge, Guillermo A. Gil Rivera. While the evidence for the prosecution was being introduced, the court decreed a mistrial, discharged the jury, and ordered that the trial in the case of involuntary manslaughter be held before another jury and another judge. The court continued holding the hearing in the case for violation of the Weapons Law and after the evidence of both parties had been introduced, it found defendant guilty of that offense.

On December 29, 1967, the trial in the case of involuntary manslaughter was held, said trial being presided by another magistrate. The jury who sat at the trial found defendant guilty of the offense charged against him. On February 19, 1968, a suspended sentence of three years in jail for the offense of involuntary manslaughter was entered against defendant. The same day Judge Gil Rivera punished him to serve one year in jail for the violation of the Weapons Law. Although he requested it, he was denied the suspension of the effects of this judgment.

In this appeal appellant assigns the commission of several errors. In the first one he maintains that he was entitled to the holding of the preliminary hearing pursuant to Rule 23 of the Rules of Criminal Procedure in the case of involuntary manslaughter.

We do not agree. Rule 23 of the Rules of Criminal Procedure provides for the holding of a preliminary hearing "in all cases in which a person is charged with the commission of a felony." This rule retains the general distinction made in the Penal Code (33 L.P.R.A. § 35) between a felony and a misdemeanor.[1] A felony is a crime punishable by imprison-

---

[1] This distinction is followed in other rules of the Rules of Criminal Procedure. See, for example, Rules 22, 64, 69, 111, 162, 166, 174, 243. See, also, *People* v. *Superior Court*, 95 P.R.R. 568 (1967).

ment in the penitentiary.[2] The offense of involuntary manslaughter is a misdemeanor because it is punishable by a fine or jail or both punishments[3] although by express provision of § 204 of the Penal Code (33 L.P.R.A. § 636) and paragraph 2 of § 11 of Art. II of the Constitution of the Commonwealth of Puerto Rico, the person accused for such offense is entitled to a trial by jury. *People* v. *Matías Castro*, 90 P.R.R. 515 (1964). The word "felony" used in Rule 23 refers to the offenses classified as such by the Penal Code. Therefore, the offense of involuntary manslaughter which is a misdemeanor is not included in the same. *Dávila Vives* v. *Superior Court*, 93 P.R.R. 757 (1966).

The denial of the trial court to dismiss the informations on September 12 as well as on November 3, 1967, is assigned as a second error, since defendant had not been submitted to trial within the 122 days following the filing of the complaints, without there being a just cause therefor or defendant having consented to the delay.

The informations were filed on January 24, 1967. The arraignment was held on the following February 9 and that same date April 4, 1967 was set for the holding of the trial. In the meantime defendant filed a motion to dismiss relying on Rule 64 (q) [(p) in the Spanish text] of the Rules of Criminal Procedure, which was discussed and decided against him on March 13, 1967, and setting of the hearing of the case for April 4 was ratified. On that date defendant requested the postponement of the hearing of the cases until this Court passed upon a petition for certiorari which he had filed to review the order of denial of his motion to dismiss. The trial court agreed to the postponement and made a new setting

---

[2] See *People* v. *Méndez*, 65 P.R.R. 660 (1946), where it is held that when the Legislature labels an offense a misdemeanor despite the fact that imprisonment in the penitentiary might be imposed therein, the offense is a misdemeanor and in this special case the general distinction between one offense and the other is not applicable.

[3] *People* v. *District Tribunal*, 66 P.R.R. 379 (1946).

for June 20, 1967. On April 26, 1967, we denied said petition for certiorari and the order was received in the trial court on May 12, 1967.

On June 20, 1967, the court continued the hearing of the cases on account of the absence of two witnesses for the prosecution, one of whom was in the United States. A new setting was made for July 21, 1967, and the arrest of one witness who had not appeared on June 20 was ordered.

On June 30, 1967, defendant filed a motion to dismiss the information because the trial had not been held within the 120 days after the information had been filed. This motion was set for July 21, 1967, date set for the trial. On said day defendant desisted from his motion to dismiss since three days before he had requested to set aside said motion because the 120 days had not yet elapsed. He alleged being ready for the trial but the court postponed it because it was hearing another case of involuntary manslaughter. It ordered the summons of three witnesses for the prosecution who had not appeared, and set the hearing again for September 12, 1967.

On September 8, defendant requested again the dismissal of the informations because the trial had not been held within the 120 days after the informations had been filed. This motion was discussed and was denied on September 12, date set for the trial. With the defense's objection the court continued the hearing of the cases because it was going to hear during all that day, another case for Murder in the First Degree. The trial was set again for November 3, 1967. On that date defendant requested again the dismissal of the informations. The court denied it because it understood that there was just cause for the delay and on the additional ground that defendant had implicitly waived his right to a speedy trial when he did not request to have the setting of the hearing moved for a date within the 120 days. Immediately, the trial began.[4]

---

[4] On account of an accident which occurred during the proceeding, the court, at the request of the defense, and with the consent of the prosecuting

■ The failure of two witnesses for the prosecution to appear on June 20, 1967, date set for the trial, one of whom was in the United States and whose arrest was ordered by the court, was a just cause to order the postponement of the trial. *People* v. *Cruz Rivera*, 88 P.R.R. 321 (1963); *People* v. *Pacheco*, 87 P.R.R. 646 (1963); *People* v. *Pérez*, 83 P.R.R. 357 (1961); *Montalvo* v. *District Court*, 59 P.R.R. 545 (1941); *People* v. *Irlanda*, 45 P.R.R. 571 (1933); *People* v. *Ibern*, 31 P.R.R. 867 (1923).

■ The two subsequent settings made for July 21 and September 12, 1967, were within the legal term of 120 days from the continuance ordered for just cause. *People* v. *Ortiz*, 62 P.R.R. 284 (1943); *People* v. *Rexach*, 62 P.R.R. 21 (1943); *People* v. *Irlanda, supra,* and *People* v. *Ibern, supra.*

■ It having been accepted that the fact that the court was busy on July 21 and September 12, 1967, hearing other cases, is not a justified cause for the continuance ordered on said dates,[5] then the setting made for November 3, 1967, date on which the trial was held, would fall beyond the 120 days. This setting was made on September 12, 1967. Although defendant objected to the continuance ordered, he did not object to the new setting of the hearing, or make any request to set for an earlier date. On the date on which this setting was made, the 120 days since the continuance ordered for just cause on June 20, 1967 had not elapsed. On the contrary, defendant waited until November 3, date of the trial, to request the dismissal of the informations relying on his right to a speedy trial, which in our opinion, after considering all the attendant circumstances, had been waived. *People* v. *Ortiz*, 51 P.R.R. 367 (1937); *Garcés* v. *District Court*, 55 P.R.R.

---

attorney, discharged the jury who sat at the trial of the case of involuntary manslaughter and ordered that the trial be held before another jury. As to the further proceedings, no question has been raised concerning defendant's right to a speedy trial.

[5] See *Jiménez Román* v. *Superior Court, ante,* p. 855.

899 (1940); *Garcés* v. *District Court*, 55 P.R.R. 328 (1939); *People* v. *Díaz*, 60 P.R.R. 528 (1942). The second error was not committed.

In the third error assigned appellant maintains that "in both cases the evidence was not sufficient to destroy defendant's presumption of innocence."

We agree with the Solicitor General that the evidence in both cases was sufficient to establish appellant's guilt beyond a reasonable doubt. In synthesis, said evidence, as correctly summarized by the Solicitor General, is as follows:

"In the case for the violation of the Weapons Law two witnesses testified that they saw defendant firing a revolver from the balcony of his apartment in the Manuel A. Pérez Public Housing Development towards the building facing it, where the deceased Yolanda Maldonado Ramos lived. Thus, witness Carmen Pilar Domenech testified that when on the night of the events she was going by Building D-23 of the said housing development, she saw defendant firing from the balcony of his house in building D-24 towards the wall of building D-23 where the deceased Yolanda Maldonado lived. Also, this witness said that she saw when the bullet bounced against the wall because 'it threw out sparks.' See Tr. of Ev., 1st piece 46–54, 103–104.

"Another witness, named Modesta Rosa Martínez, who lived on the first floor of building D-23 facing defendant's apartment, testified that around twelve o'clock on the night of December 31, 1966 she was on the balcony of her house and that from there she saw that defendant took a revolver and began to fire shots into the air; that he was moving the arm 'in front of him upwards'; and that she heard four shots. (Tr. Ev., 1st piece, 116–121.) She also said, that after defendant finished shooting he put the weapon in the right pocket of his pants and 'closed his house and went in.' (Tr. Ev., 1st piece, 125.) Although to questions of the defense she said that she could not distinguish clearly the weapon and that what she saw were the explosions and the smoke, she stated that she knew that the explosions were from a revolver because she knew that defendant had a revolver and because 'nothing else was going to kill the girl.' (Tr. Ev., 1st piece, 127–129.)

"Besides these testimonies, the prosecuting attorney introduced witness Doris Esther Maldonado, sister of the victim, who testified, in synthesis, that on December 31, 1966 she was in her home in building D-23, Apartment 253 of the Manuel A. Pérez Housing Development, with her sister Yolanda Maldonado, her mother Carmen Ramos, and her uncle Pablo Ramos, that about ten minutes to twelve at night they went out to the balcony and she went to the bedroom to look for some horns when she heard a shot and her mother screaming; that when she returned from the bedroom she saw that Yolanda had much blood on her face. (Tr. Ev., 1st piece, 25–28.) She also said that she had the opportunity to see defendant on the balcony of his house drinking beer, but that she did not know who had fired. (Tr. Ev., 1st piece, 30–31.)

"Dr. Rafael Criado's testimony, the doctor who performed the autopsy of the deceased Yolanda Maldonado Ramos, was also offered by stipulation. According to the stipulation, which was accepted by the court, Dr. Criado would testify, in synthesis, that Yolanda Maldonado died on January 1, 1967 at 1:10 in the morning; that as evidence of the trauma he found an orifice of the nature of a bullet entry with a diameter of 0.4 cm. situated level to the space between the eyebrows with a trajectory that follows a direction from the outside to the inside, from front to back and oblique from right to left; and that the cause of the death was a severe brain laceration as a result of the bullet wound in the skull. (Tr. Ev., 1st piece, 23–24.) (Solicitor General's Report, pp. 10, 11, and 12.)

" . . . . . . . .

"In the case of the offense of involuntary manslaughter, besides the evidence which we have synthesized, the prosecuting attorney introduced the testimony of Gloria Esther Opio Rosa and Hermenegildo López. The former testified, in synthesis, that she lived on the ground floor of the building where Yolanda Maldonado lived; that the latter lived on the third floor and that defendant, on the second floor of the building in front; that the night of the events from the balcony of her house she saw defendant with a revolver in the hand firing and that he put his arm in different positions; that she saw him firing three or four times since she heard three or four detonations; that defendant was standing up while he fired and that the revolver had a short barrel; that besides the detonations of the shots there were no

other detonations in the neighborhood and that there was nobody on the street. (Tr. Ev., 2d piece, 73–78.) During the cross-examination she said that what she saw were shots, and not merely explosions; that she saw that what defendant had was a small revolver with a short barrel; that his hand was in front and the revolver was in his right hand, aiming towards building D-23. (Tr. Ev., 2d piece, 80–86.)

"The other witness who testified, in addition to the ones who testified at the trial for the violation of the Weapons Law and who repeated their testimony in this proceeding, was Hermene-gildo López. He stated, insofar as pertinent, that at 25 minutes to 12 o'clock on the night of the events he was entering apartment 253 where Yolanda was with her mother and her sister; that at that time he saw defendant on the balcony of his home and that at twelve o'clock he saw him at that same place when he was firing a shot; that he went on to Yolanda's mother's house and saw Yolanda fall to the floor wounded by a bullet and with a flow of blood on the face; that he carried her and took her to the hospital in his taxi; that he saw defendant with a small barrel pistol in the hand firing towards the building where Yolanda lived; that he heard two shots, one before twelve and another one when he went up and saw him firing. (Tr. Ev., 2d piece, 119–125.) During the cross-examination he reaffirmed that he saw when defendant fired the shot; that the latter was firing when he went up; that the pistol or the revolver had a short barrel and was black; that when he carried Yolanda from the balcony he saw defendant 'closing the door and going inside.' (Tr. Ev., 2d piece, 135, 141–142.)" (Solicitor General's Report, pp. 12 and 13.)

Then the possession of a revolved by appellant and his commission with said revolver of an offense of involuntary manslaughter as defined in § 203 of the Penal Code (33 L.P.R.A. § 635), which provides that said offense is the unlawful killing of a human being without malice in the commission of an unlawful act not amounting to felony, or in the commission of a lawful act which might produce death in an unlawful manner or without the due caution and circumspection, are established.

██ To voluntarily fire a firearm, as appellant did, without it being a case of self-defense or an action in the discharge of official functions, constitutes a misdemeanor. Section 33, Weapons Law of Puerto Rico (25 L.P.R.A. § 442). Upon defendant unlawfully killing the human being Yolanda Maldonado, without malice when he performed the unlawful act of voluntarily firing a firearm, he incurred the commission of an offense of involuntary manslaughter.

The determination of the trial judge in the sense that, as a question of law, defendant could not be awarded the privilege of the suspended sentence for the violation of § 6 of the Weapons Law, is assigned as the fourth and last error.

The error was not committed. Act No. 259 of April 3, 1946, as amended, provides in its § 2:

"The Superior Court may suspend the effects of a sentence entered in any case of felony other than murder, robbery, incest, extortion, rape, infamous crime against nature, kidnapping or burglary, and may likewise suspend the effects of a sentence entered in all cases of misdemeanor arising from the same facts or transaction which have given rise also to a sentence for felony other than those excluded from the benefits of sections 1026–1029 of this title by this section, including the case in which the person has been found not guilty of said felony, or the felony has been reduced to a misdemeanor and the person has been convicted thereof, and shall order that the person sentenced be placed on probation, if at the time of imposing said sentence all of the following requisites concur: . . .

". . . . . . . .

"In accordance with the foregoing, the trial court may also suspend the effects of the jail sentence imposed in a case of involuntary homicide not arisen while driving a vehicle in a state of intoxication." (34 L.P.R.A. § 1027, 1969 Cum. Supp. pp. 61–62.)

 This act authorizes the suspension of the effects of the sentence entered in all cases of *misdemeanor* arising from the same facts or transaction which have given rise also to a sentence for *felony* other than those excluded, even when the

sentence for felony is an acquittal or has been reduced to a misdemeanor. This act does not authorize the suspension of the effects of a sentence in a case of misdemeanor which arises from the same facts or transaction, which have given rise also to a sentence for another misdemeanor, as occurs in the case at bar for involuntary manslaughter, as we have just established, is a misdemeanor. By express provision of the act, the Superior Court may suspend the effects of a sentence entered in any case of involuntary manslaughter not occasioned while driving a motor vehicle in a state of intoxication. By virtue of this legal provision the trial court suspended the effects of the sentence in the case of involuntary manslaughter, but, as Judge Gil Rivera correctly decided, the suspension of the effects of the sentence entered in the case for violation of the Weapons Law did not lie as a question of law.[6]

In view of the foregoing grounds the judgments appealed from will be affirmed.

Mr. Chief Justice Negrón Fernández did not participate herein.

---

[6] Like the trial judge did, the actual state of the act, precludes us from deciding appellant's contention in his favor. We believe, however, that the ends and purposes of the acts which authorize the suspension of the effects of the sentences would be best served if by amendment, the Superior Court is authorized to suspend the effects of a sentence entered in a case of misdemeanor when it arises from the same facts or transaction which would have given rise besides to a sentence for the offense of involuntary manslaughter. Such determination, corresponds, of course, to the Legislature.